Steven S. SCHOLES, not individually, but solely as Receiver for D & S Trading Group, Ltd., Analytic Trading Systems, Inc., Analytic Trading Service, Inc., and Market Systems, Inc., and on behalf of a class, and John LaVinka and Pamela LaVinka, individually and on behalf of all persons similarly situated, Plaintiffs,

v.

STONE, McGUIRE & BENJAMIN, Howard L. Stone, Michael L. Siegel, Rosenthal and Schanfield, P.C., William P. Rosenthal, and Leslie J. Weiss, Defendants.

No. 90 C 7201.

United States District Court, N.D. Illinois, E.D.

Aug. 11, 1992.

See also 786 F.Supp. 1385.

Gary L. Prior, Paul J. Kozacky, McDermott, Will & Emery, P.C.; and Jerrold E. Salzman, Phillip Leon Stern, Sherman Paul Marek, and Robert P. Scales, Freeman, Freeman & Salzman, P.C., Chicago, Ill., for plaintiffs.

Howard Michael Pearl, Dan K. Webb, Catherine W. Joyce, Donald Joseph Mizerk, Winston & Strawn; Daniel J. Pope, Carson P. Veach, Debra Ann Winiarski, Mark Lee Shaw, James L. Curtis, Helen Katharine Whatley, Alexander S. Vesselinovitch, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

### I. *Background*

This action is brought by Steven S. Scholes ("Scholes"), not individually but solely as Receiver for D & S Trading Group, Ltd. ("D & S"), Analytic Trading Systems, Inc. ("AT Systems"), Analytic Trading Service, Inc. ("AT Service"), and by John and Pamela LaVinka (the "LaVinkas"), individually and on behalf of a putative class of investors in D & S, AT Systems, and AT Service, against defendants Stone, McGuire & Benjamin ("SMB"), Howard L. Stone, a partner of SMB, Michael L. Siegel, a non-equity partner of SMB, Rosenthal and Schanfield, P.C. ("R & S"), William P. Rosenthal, a senior shareholder of R & S, and Leslie J. Weiss, an attorney employed by R & S.[1] This action arises out of certain fraudulent schemes perpetrated by Michael S. Douglas ("Douglas"), for which Douglas pleaded guilty and is cur-

---

**1.** For ease of discussion, we will collectively refer to R & S, William Rosenthal and Leslie Weiss as R & S throughout this opinion.

rently incarcerated. The LaVinkas assert civil cases of action against the attorneys who allegedly assisted Douglas in carrying out his illegal schemes.

The LaVinkas' complaint consists of eight counts. The LaVinkas have alleged claims for violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder against SMB (Count III) and R & S (Count VIII). In addition, the LaVinkas have alleged supplemental claims for legal malpractice—negligence against SMB (Count I) and R & S (Count V), breach of fiduciary duty against SMB (Count II) and R & S (Count VI), and common law fraud against SMB (Count IV) and R & S (Count IX).[2] The LaVinkas now move to certify a class on behalf of all persons or entities who were investors in D & S, AT Systems or AT Service and who have lost some or all of their investments. Excluded from the class are those investors who are defendants in class actions instituted by either the LaVinkas or by Harris and Diane De-Jong. For the following reasons, the court will certify the class proposed by the La-Vinkas, reserving the right to alter, amend or modify the class pursuant to Federal Rule of Civil Procedure 23(c).

## II. *Class Certification*

The LaVinkas bear the burden of demonstrating that all four prerequisites of Rule 23(a) are satisfied as well as one of the three categories of Rule 23(b). *See Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984). Class certification under Rule 23(a) is appropriate when: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a). Equally important, because the LaVinkas wish to certify a class pursuant to Rule 23(b)(3) they must also demonstrate that "questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED.R.CIV.P. 23(b)(3).

The defendants contend that none of the four prerequisites are met. We address each essential element of Rule 23(a) in turn. Thereafter, we consider the requirements of Rule 23(b)(3).

### A. *Numerosity*

According to Rule 23(a) the proposed class must be so numerous that joinder of all members is impracticable. The LaVinkas seek to represent a class of 129[3] to some 300 persons geographically dispersed throughout the United States. In fact, the complaint alleges that over 300 account holders in the various Douglas entities lost in excess of 24 million dollars as a result of Douglas' fraudulent conduct.

Defendants advance several challenges to the numerosity requirement. First, R & S states that it is unclear whether the LaVinkas have divided the class into subclasses which parallel those classes set forth in the SEC's Plan of Distribution. Next, R & S argues that the LaVinkas have not identified which investors would not be included in the class because they allegedly participated in Douglas' scheme. Along this same line, SMB contends that the LaVinkas may not rely on conclusory allegations to demonstrate that joinder is impracticable. Finally, defendants assert that it is unlikely the LaVinkas will satisfy the numerosity requirement in light of two other pending lawsuits in this district:

---

**2.** We note for the record that Counts One, Two, Five and Six are brought jointly by the Receiver on behalf of the receivership entities and by the LaVinkas on behalf of the investor class.

**3.** The LaVinkas appear to have lowered the potential class to approximately 129 investors. The proposed class is based in part on the SEC's modified Plan of Distribution. The 129 figure is based on 109 class one account holders, 12 delayed claimants and 8 class two account holders (excluding the Tomlinsons who are defendants in a class action suit initiated by the DeJongs). However, this number is understated to the extent that some individual investors combined their funds into single accounts.

*Chemco, Inc., et al. v. Stone, McGuire & Benjamin, et al.,* No. 91 C 5041 (Norgle, J.) and *Agnes, et al. v. Weiss, et al.,* 91 C 5880 (Zagel, J.).

R & S's initial argument merits no extended discussion. The LaVinkas are not seeking to certify subclasses in conformance with the SEC's Plan of Distribution. For that matter, we cannot fathom how subclasses would be appropriate in this case.

 Second, contrary to SMB's assertion, the LaVinkas are not relying on conclusory allegations of numerosity. The complaint need not allege the exact size of the proposed class nor the identity of the class members. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989); *In re VMS Securities Litigation,* 136 F.R.D. 466, 472 (N.D.Ill.1991). A finding of numerosity may be supported by "common sense assumptions." *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 785 (N.D.Ill.1984). In this court's view, the numerosity element is easily satisfied based on common sense assumptions and public documents. *See, e.g., Vergara v. Hampton,* 581 F.2d 1281, 1284 (7th Cir. 1978), *cert. denied,* 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979). The LaVinkas seek to represent a class of investors based largely on the SEC's modified Plan of Distribution. The SEC's modified Plan identifies more than 100 injured account holders by name. As a result, we reject SMB's argument as wholly without merit.[4]

Finally, we categorically reject SMB's and R & S's arguments that joinder of 129 investors in a single suit is practicable. Defendants rely on the fact that ten claimants filed a class action against SMB and R & S in the *Chemco* litigation pending before Judge Zagel[5] and that approximately 72 investors joined together individually against R & S and Leslie Weiss in the *Agnes* litigation pending before Judge Norgle. According to defendants' logic, because many of these investors are the same individuals the LaVinkas desire to represent, the class the LaVinkas seek to certify before this court could be as little as forty claimants.[6] This reasoning is flawed for several reasons.

We agree with the LaVinkas that numerosity exists or it does not. At this juncture, the court cannot speculate on how investors may exercise their opt-out privilege. There is absolutely no guarantee that all 80 or so investors would desire to proceed in subsequent litigation instead of this action. In any event, we will not engage in such conjecture for the simple reason that a class of 40–50 investors is sufficient to qualify as a class. *See, e.g., Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986) (certifying a class of 29 persons); *Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 6 (N.D.Ill.1977) (class of 25 to 50 persons would be sufficiently numerous to warrant certification).

Similarly, we are not convinced that merely because the *Agnes* complaint names approximately 72 individual plaintiffs that proves such an action is practicable. On the contrary, the trial of such an action can hardly be characterized as convenient. In our opinion, requiring each of 72 plaintiffs to prove his or her individual case would be extremely burdensome, inconvenient and a strain on already overtaxed judicial resources. Clearly, the numerosity element of Rule 23(a)(1) is met in this case.

B. *Commonality*

 Rule 23(a)(2) requires that there be questions of law or fact common to the class. The LaVinkas argue that issues of law and fact common to the class include: (1) whether misrepresentations and omis-

---

**4.** In this same vein, we are puzzled by R & S's suggestion that the LaVinkas have not identified which investors are not included in the class. R & S has not cited any case law in support of this request and we fail to understand how it is relevant.

**5.** The *Chemco* litigation is no longer proceeding as a class action. On July 9, 1992, Judge Zagel granted plaintiffs' motion to dismiss the class action.

**6.** R & S's contention that some of the remaining claimants may prefer the *Chemco* class action thereby further reducing the size of the class, no longer holds water in light of Judge Zagel's July 9, 1992 order.

sions were made to the class in connection with sales of securities by Douglas, D & S, AT Systems and AT Service; (2) the nature of defendants' conduct in connection with the purported rescission offer and sale of securities by Douglas, D & S, AT Systems and AT Service; and (3) whether defendants' conduct violated federal securities law or fiduciary duties, or constituted common law fraud or professional malpractice.

"The fact that there is some factual variation among the class grievances will not defeat a class action. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir.1992) (citations omitted). In fact, the commonality requirement has been characterized as a "low hurdle" easily surmounted. *Wesley v. General Motors Acceptance Corp.*, No. 91 C 3368, 1992 WL 57948, at \*3, 1992 U.S. Dist. LEXIS 3594, at \*10 (N.D.Ill. March 20, 1992).

Defendants do not raise any valid objections to this second requirement. We agree with the LaVinkas that defendants have confused the Rule 23(a)(2) commonality requirement with the Rule 23(b)(3) requirement that common issues predominate. Therefore, we conclude that these issues, which constitute the gist of the LaVinkas' claims, meet the commonality requirement.

### C. *Typicality*

■ The LaVinkas' claims are typical under Rule 23(a)(3) if they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d at 1018 (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). Typical does not mean identical. Rather, the court must "look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)." *Rosario v. Livaditis*, 963 F.2d at 1018. The typicality requirement is liberal-

ly construed. *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 344 (N.D.Ill.1978).

■ Defendants challenge the typicality requirement on several grounds. First, defendants insist that because Pamela LaVinka was an associated person who solicited individuals to invest in the Douglas entities she is subject to a unique defense which destroys typicality. *See J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 999 (7th Cir.1980); *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir.1974). Second, the defendants suggest that the LaVinkas may not have relied on any defendant's allegedly fraudulent representations in deciding to invest or, alternatively, the LaVinkas did not rely on the same documents as the other investors rendering them atypical. As we address these arguments in greater detail in our review of the adequacy of representation and predominance factors, we briefly address in this section only the first of defendants' objections.

Defendants assert the LaVinkas are subject to unique defenses because of Pamela LaVinka's salesperson status. However, there is no evidence that Pamela LaVinka defrauded any investors whom she now seeks to represent in this class action.[7] In point of fact, the LaVinkas conveyed information regarding their investments to a family friend and relative after these individuals expressed interest in their investments with Douglas. Furthermore, there is no evidence that the LaVinkas knew of Douglas' criminal background, knew his published trading history was false, or knew that he was operating a classic Ponzi scheme.

At bottom, the LaVinkas contend that the typicality factor is satisfied because they and the class members were victims of the same fundamental scheme and that minor variations in factual circumstances are irrelevant. *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983); *Fry v. UAL Corp.*, 136 F.R.D. 626, 631 (N.D.Ill.1991); *Edmondson v. Si-*

---

7. The fact that Pamela LaVinka was dismissed by the plaintiffs as a party defendant in the *Marchuk* litigation because she was most likely an innocent victim of Douglas' myriad schemes, lends further credence to this position.

*mon*, 86 F.R.D. 375, 381 (N.D.Ill.1980) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met irrespective of varying fact patterns which underlie individual claims.") We are persuaded by this reasoning.

### D. *Adequacy of Representation*

The final element of Rule 23 requires that the representative parties fairly and adequately represent the class. *Rosario v. Livaditis*, 963 F.2d at 1018. This subsection is composed of two factors. The first requirement is that the class representative not have interests antagonistic to those of the class. The second requirement is that the plaintiffs will vigorously pursue the litigation on behalf of the class and their chosen attorney must be qualified, experienced and able to conduct the litigation.[8] *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986); *Fry v. UAL Corporation*, 136 F.R.D. at 634. Defendants strenuously challenge the adequacy of the LaVinkas to represent the class and mount a four-pronged attack. For ease of discussion, the court will address each argument in turn.

■ First, R & S questions the LaVinkas' willingness and ability to pay the costs of this litigation. In *Rand v. Monsanto Co.*, 926 F.2d 596, 601 (7th Cir.1991), the Seventh Circuit held that the class representative need not be responsible for all costs of a class action. The LaVinkas' retention agreement provides that counsel will advance costs and, if no recovery is obtained, the LaVinkas understand that the law may require that each class representative be responsible for his or her pro rata share of costs.

R & S has utterly failed to demonstrate that the LaVinkas are unable or unwilling to pay their pro rata share of the litigation costs. · In the absence of such evidence, we reject R & S's argument as without merit. However, in the event such evidence does come to light defendants may bring this matter to the court's attention. Fᴇᴅ. R.Cɪᴠ.P. 23(c)(1).

Second, R & S contends that the LaVinkas are inadequate class representatives because they have no personal knowledge regarding the allegations of the complaint. In support, R & S cites to authority outside this circuit, *Weinstein v. American Biomaterials Corp.*, 123 F.R.D. 442, 466 (S.D.N.Y.1988).[9] Unfortunately for R & S, a class representative's limited knowledge of the facts alleged in the complaint will not defeat class certification.

■ It is well-settled that class representatives in securities fraud cases need not have a detailed understanding of the complaint and may rely on the expertise of counsel. *Searls v. Glasser*, No. 91 C 6796, 1992 WL 109042, at *2, 1992 U.S. Dist. LEXIS 6643, at *7 (N.D.Ill. May 11, 1992); *In re VMS Securities Litigation*, 136 F.R.D. at 478; *Kaplan v. Pomerantz*, 131 F.R.D. 118, 121–22 (N.D.Ill.1990) ("[A] layman cannot be expected to explain in detail all of the intricacies of a complex securities fraud lawsuit."); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522, 528 (N.D.Ill.1988) (it is irrational to expect plaintiffs to exhibit a detailed knowledge of the issues in a complex securities case involving novel economic and legal theories such as fraud on the market); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 556 (D.Mass.1988) ("A representative need not have personal knowledge of all the relevant facts to be deemed adequate.") We are persuaded by the sound analysis of these numerous authorities and conclude that the LaVinkas' lack of knowledge regarding the allegations of the complaint does not warrant denial of certification.

■ Third, R & S asserts that the LaVinkas' lack of credibility prevents them from being adequate class representatives. In

---

8. There is no dispute that counsel for the LaVinkas are well-qualified and experienced. The court commends the capable work of counsel for both plaintiffs and defendants throughout this litigation.

9. *Weinstein* is clearly inapposite. The allegations of the complaint were based entirely on information and belief and plaintiff disclaimed any personal knowledge of any of the claims in the complaint.

support of its position, R & S gives examples of the LaVinkas' deposition testimony and cites to authority outside this circuit. *See Kline v. Wolf,* 702 F.2d 400, 403 (2d Cir.1983); *Weinstein v. American Biomaterials Corp.,* 123 F.R.D. 442, 466 (S.D.N.Y.1988); *Koenig v. Benson,* 117 F.R.D. 330, 338 (E.D.N.Y.1987).[10] Again, we do not agree with R & S.

The LaVinkas properly point out that a jury, not counsel for defendants, will decide whether Pamela LaVinka is or is not credible. *See Tolan v. Computervision Corp.,* 696 F.Supp. 771, 780 (D.Mass.1988) (credibility of class representative is left for trial). Equally important, simply because the LaVinkas could not remember specifics and could only speak in generalities does not render them incredible. Not surprisingly, R & S fails to cite to any analogous authority let alone any case in support of its argument. This proffered reason is simply not a basis upon which to disqualify the LaVinkas as class representatives. *See Hoffman Elec., Inc. v. Emerson Elec. Co.,* 754 F.Supp. 1070, 1076–77 (W.D.Pa.1991).

■ Defendants' last ground of attack is their most forceful. Defendants strenuously argue that the requirements of Rule 23(a)(4) are not met because the LaVinkas cannot fairly and adequately protect the interests of the class they seek to represent because they have antagonistic or conflicting interests. Essentially, defendants assert that the LaVinkas' claims are antagonistic to other members of the class because Pamela LaVinka was a seller or associated person who potentially profited from other investors' losses. Defendants cite extensively to Pamela LaVinka's deposition testimony which reveals that she communicated with Douglas, utilized the services of his accountant, and borrowed money on his line of credit. This testimony, according to defendants, proves that the LaVinkas are not innocent victims of the alleged fraudulent scheme.

The LaVinkas counter that the defendants have attempted to manufacture antagonism between the LaVinkas and the class. The LaVinkas argue that mere speculation about potential antagonism between the class and the representative is insufficient to defeat certification. *Littlewolf v. Hodel,* 681 F.Supp. 929, 937 (D.D.C. 1988); *Safran v. United Steelworkers of America,* 132 F.R.D. 397, 404 (W.D.Pa. 1989). Finally, they argue that there must be an actual showing of a real probability of a potential conflict. *In re South Central States Bakery Prods. Antitrust Litigation,* 86 F.R.D. 407, 418 (M.D.La.1980).

At this point, we are satisfied that defendants have not shown a real probability of a potential conflict.[11] We have carefully reviewed Pamela LaVinka's deposition testimony and believe defendants mischaracterize some of her statements. For example, the $88,077.78 "finder's fee" the LaVinkas received from AT Service for introducing their friend and family member was immediately reinvested by the LaVinkas in one of the Douglas entities, and the entire investment was lost. In fact, while the Receiver did initially demand return of the $88,077.78 fee from the LaVinkas, after a review of the documents supplied by the LaVinkas, the Receiver did not pursue the return of this finder's fee. Stated another way, there is no outstanding demand by the Receiver for this fee because the Receiver determined no further action was appropriate.

Similarly, the defendants have not set forth all the facts relating to *Marchuk v. Schroeder, et al.,* No. 90 C 6569 (Zagel, J.). Initially, a class action was brought against Pamela LaVinka and others alleging violations of federal securities law based on their activities as associated persons. However, Pamela LaVinka was dismissed by the plaintiffs on March 27, 1991 "because it presently appears that LaVinka

10. We believe that the LaVinkas have persuasively distinguished these cases and no further discussion on this point is necessary.

11. The class is by no means carved in stone. As we have previously stated throughout this opinion, in the event such evidence surfaces defendants may bring this matter to the court's attention. FED.R.CIV.P. 23(c)(1). If such evidence does come to light the court could decertify the class or take other appropriate action as is necessary.

may have been a victim of the alleged scheme rather than a participant." Therefore, we conclude that the LaVinkas are not antagonistic to the class.

## E. *Predominance and Superiority*

■ As we have determined that all the prerequisites of Rule 23(a) are met, we next address the requirements of Rule 23(b)(3). The LaVinkas once again must establish that class questions predominate and that a class action is a superior method to adjudicate this controversy. FED. R.CIV.P. 23(b)(3).

Both SMB and R & S challenge the first prong of Rule 23(b)(3) and argue that individual issues will predominate because the alleged underlying fraud was not the same for all members of the class. Stated another way, because the class members invested at different times, for different periods, with different Douglas entities, based on different knowledge (*i.e.*, oral or written representations), individualized evidence will be much more voluminous than any common evidence. In addition, R & S argues that because Pamela LaVinka testified her investment decisions were based on oral and written representations, the testimony of each and every investor regarding the precise contents of each and every communication becomes necessary. Finally, defendants assert that the supplemental state law claims cannot be certified because they involve different common law standards giving rise to individual issues. We do not agree.

As an initial matter, Pamela LaVinka's deposition testimony needs to be explored in greater detail. She identified certain written offering materials she received in connection with the LaVinkas' investments in the various Douglas entities. The complaint alleges that these and other written materials were relied on by investors and circulated to all class members. These written documents which contain the alleged material misrepresentations provide the requisite commonality.

In this same vein, simply because oral misrepresentations exist denial of class cer-

tification is not automatic. *Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D.Ill. 1986) ("A class action will not be defeated solely because there are some factual variations among the members' grievances ... Thus, the mere fact that some additional oral misrepresentations were allegedly made to the named plaintiffs does not preclude a finding of commonality."); *Longden v. Sunderman*, 123 F.R.D. 547, 553 (N.D.Tex.1988) ("[O]ral representations to investors do not necessarily translate into unique communications to class members."); 4 H.B. Newberg, *Newberg on Class Actions* § 22.48 at 96–98 (2d ed. 1985) ("When both oral and written misrepresentations are made, a class may be certified if all class members were mislead by similar documents.") We find that common issues dominate.

Lastly, we are not persuaded by defendants' argument that the state common law claims for fraud and malpractice will require different common law standards giving rise to individual issues. We are satisfied that the LaVinkas' state law claims arise from essentially the same allegations as their federal claims. The LaVinkas "will have to prove the same misrepresentations and omissions regardless of the state law applicable to each plaintiff's claims." *In re VMS Securities Litigation*, 136 F.R.D. at 480. In any event, "[t]he recent trend in securities fraud cases is to certify related pendent claims, allowing for reconsideration upon a later determination that the applicable state laws are so diverse that class certification is inappropriate." *In re VMS Securities Litigation*, 136 F.R.D. at 480 (and cases cited therein). At this juncture, we find that common issues predominate over individual issues. If additional relevant information comes to defendants' attention, they should so apprise the court.

■ In addition, defendants contend that a class action is not superior to individual actions. Defendants maintain that because the individual claims in this action are large [12] these individuals have a great

---

12. Pamela LaVinkas' deposition testimony re- veals that the LaVinkas' lost approximately

interest in prosecuting their own claims without use of the class action device. *See Stoudt v. E.F. Hutton & Co.*, 121 F.R.D. 36, 38 (S.D.N.Y.1988). Essentially they assert that the class mechanism is unfair given the size of the individual claims.

The mere fact that the LaVinkas' claim may exceed $300,000 is not enough to deny certification. *Epifano v. Boardroom Business Prods., Inc.*, 130 F.R.D. 295, 298–99 (S.D.N.Y.1990). Many of the class investors may have losses of less than $50,000. In this court's view, it is very likely that these investors would be unable to proceed with individual actions.

Equally important, judicial economy and efficiency, as well as consistent judgments, are achieved by certifying the class. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 645 (N.D.Cal.1987); *Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 374 (E.D.Pa.1980), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985). What would be unmanageable is the institution of numerous individual lawsuits. Therefore, we conclude that the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

### III. *Conclusion*

For the reasons stated more fully in this opinion, the court grants the LaVinkas' motion to certify a class consisting of all persons or entities who were investors in D & S, AT Systems or AT Service and who have lost some or all of their investments. Excluded from the class are those investors who are defendants in class actions instituted by either the LaVinkas or by Harris and Diane DeJong. With regard to notice to class members pursuant to Federal Rule of Civil Procedure 23(c)(2), plaintiffs are directed to submit a draft of their proposed notice form to the court and opposing counsel on or before August 17, 1992. Any objections to plaintiffs' proposed notice shall be filed on or before August 21, 1992.

$300,000 in Douglas investments. SMB states that numerous claimants have individual losses

A status hearing will be held on this matter on August 24, 1992 at 9:30 a.m.