Wesley Timothy HENRY and Cindy Howard, Plaintiff,

v.

CASH TODAY, INC. et al., Defendants

George Rodriguez, et al., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Cash Today, Inc., et a., Defendants.

No. CIV. A. H–99–3335, CIV. A. C–99–305.

United States District Court, S.D. Texas, Houston Division.

Sept. 19, 2000.

Richard Tomlinson, Attorney at Law, Houston, for Wesley Timothy Henry and Cindy Howard.

James Thomas McMillen, Attorney at Law, Corpus Christi, TX, Richard Tomlinson, Attorney at Law, Houston, TX, James O. Latturner, Edelman Combs et al., Chicago, IL, for George Rodriguez, Danny Grande, Jr. and Leticia Balboa.

Robin Clay Hoblit, Chavez, Gonzales & Hoblit, Corpus Christi, TX, Stephen Rothburn Darling, Chaves Gonzales et al., San Antonio, TX, Guy I. Wade, III, Geneva E. Stephens, Jenkens & Gilchrist, Dallas, TX, Phillip A. McKinney, Hornblower, Manning & Ward, Corpus Christi, TX, for Defendants.

## ORDER

HARMON, District Judge.

Pending before the Court in the above referenced consolidated action, alleging Defendants' usurious "payday loans" transacted under pretext as sales of advertising, violate the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, as interpreted by the Federal Reserve Board in implementing Regulation Z, 12 C.R.R. § 226, the Racketeer Influenced and Corrupt Organizations Act ("RICO") and seeking damages, 18 U.S.C. §§ 1961 *et seq.*, and Texas state law, including the usury laws, Texas Finance Code Ch. 342 and/or Texas Credit Code Ch. 3A, Tex. Rev.Civ. State. Ann. art. 5069–3A, the Texas Debt Collection Act, Texas Finance Code Ch. 392, the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex. Bus. & Comm.Code Ann. §§ 17.41 *et seq.*, and civil conspiracy, is Plaintiffs' amended motion for class certification (instrument # 58) with respect to Counts One (TILA), Two (usury), Four (DTPA), Five (civil conspiracy), and Six (RICO).

An evidentiary hearing was held on class certification on September 15, 2000. After reviewing the record, the evidence and argument presented at the hearing, and the applicable law, the Court concludes for the reasons indicated below that the motion should be granted.

As a brief summary, Plaintiffs' First Amended Consolidated Class Action Complaint alleges that Defendants are unlicensed lenders engaging in a practice, centrally directed by Cash Today, U.S.A., of making high interest (at more than twice the rate permitted by Texas law) payday loans throughout Texas, while pretending to sell advertising and operating a check cashing business in order to avoid liability for usury and violations of TILA. They allegedly violated TILA by failing to make required disclosures about the amount financed, the financial charge, the annual percentage rate, and the total number of payments. They are charged with violating the Texas Finance

Code by making customer loans at usurious rates. Defendants are further accused of engaging in prohibited debt collection methods and false, misleading or deceptive acts or practices through threats of criminal prosecution and misrepresentations about the extent and validity of Plaintiffs' loans, representing that the transactions to Plaintiffs were not loans and thus not subject to usury laws, and requesting Plaintiffs to sign statements waiving their rights under bankruptcy laws.

Before certifying a class, the district court must conduct a rigorous analysis of Federal Rule of Civil Procedure 23's prerequisites. *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996).

Rule 23(a) provides for class certification if the following four requirements are satisfied:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ There are no *per se* rules for deciding if a class is of sufficient size to satisfy the first requirement, numerosity. *Watson v. Shell Oil Co.,* 979 F.2d 1014, 1022 (5th Cir. 1992). The court should consider all the circumstances of the suit and need only show that the class is so large that joinder of all plaintiffs is impracticable. *Id.* "Impractical" does not mean impossible, but rather that joinder of similarly situated individuals as plaintiffs would be "extremely difficult or inconvenient." 5 *Moore's Federal Practice* § 23.22[1], [2]. Plaintiffs are permitted to reasonably approximate the size of the class to satisfy their burden. *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981); *Abrams v. Kelsey–Seybold Med. Group, Inc.,* 178 F.R.D. 116, 128 (S.D.Tex. 1997). Relevant factors in determining whether numerosity exists are geographic distribution of potential class members, ease of identification of members, the nature of the action, the size of each individual's claim, and the effect of injunctive relief on future class members. *Zeidman,* 651 F.2d at 1038.

The second prerequisite, commonality, or shared issues of law and fact, is not a high burden. *Lightbourn v. County of El Paso, Texas,* 118 F.3d 421, 426 (5th Cir.1997), *cert. denied,* 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998). It does not require a showing that the interests and claims of class members are identical, but only that "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993); *Lightbourn,* 118 F.3d at 426; *Shipes v. Trinity Indus.,* 987 F.2d 311, 316 (5th Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993).

■ The typicality requirement is also not high. *Lightbourn,* 118 F.3d at 426. It mandates that the members have the same interests and have suffered the same injuries as others in the putative class. *East Texas Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). The court focuses on the legal and remedial theories of the named plaintiffs and the class members they seek to represent. *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986). *See also Lightbourn,* 118 F.3d at 426.

■ Last, the representative plaintiffs must fairly and adequately represent the interests of the class, i.e., their interests must not be antagonistic to those of the other class members, and the representatives' attorneys must be able to prosecute the action vigorously. *Longden v. Sunderman,* 123 F.R.D. 547, 557 (N.D.Tex.1988); *East Texas Motor Freight,* 431 U.S. at 405, 97 S.Ct. 1891. Thus the court must consider the competency of plaintiffs and their attorneys, who must demonstrate experience in and ability to handle class actions. *Gibb v. Delta Drilling Co.,* 104 F.R.D. 59, 75 (N.D.Tex.1984).

Once Rule 23(a) requirements have been met, the movants must also demonstrate that the class action is maintainable under at least

one of Rule 23(b)'s three subsections. *Washington v. CSC Credit Services, Inc.,* 199 F.3d 263, 265 (5th Cir.), *cert. denied,* 530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000).

Rule 23(b)(1)(A) allows a class action to be maintained if the adjudications of the individual members of the class would create a "risk" of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Such a risk is realized where the party opposing the class would be caught "in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Walker v. City of Houston,* 341 F.Supp. 1124, 1131 (S.D.Tex.1971)("In essence, Rule 23(b)(1) is concerned with the prejudicial effect which inconsistent judgments may have on the party opposing the class."). Rule 23(b)(1)(B) allows an action to be maintained where "adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."

Rule 23(b)(2) requires plaintiffs to show that the "predominant relief sought is injunctive or declaratory." *Id., citing Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 408 (5th Cir.1998). According to the Advisory Committee Notes, Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." That Note has been widely accepted by the Circuit Courts of Appeals. *See also Allison,* 151 F.3d at 410; *Eubanks v. Billington,* 110 F.3d 87, 92 (D.C.Cir.1997); *Zimmerman v. Bell,* 800 F.2d 386, 389–90 (4th Cir.1986); *In re School Asbestos Litigation,* 789 F.2d 996, 1008 (3d Cir.). *cert. denied,* 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1982); *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1155 (11th Cir.1983); *Simer v. Rios,* 661 F.2d 655, 668 n. 24 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968). Because Plaintiffs seek damages and statutory penalties here, this provision is inapplicable.

■ To maintain a class action under Rule 23(b)(3), as Plaintiffs seek to do here, they must show that (1) common questions predominate over any questions affecting only individual members (predominance requirement), (2) that the class resolution is superior to other available methods for the fair and efficient adjudication of the controversy (superiority requirement). *Washington,* 199 F.3d at 265, *citing Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 623–24 (5th Cir. 1999), *cert. denied,* 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000), and *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Factors the court should consider in determining whether a class action is superior to other methods of adjudication include the interest of members of the class in individually controlling the prosecution of separate claims, the extent and nature of any litigation concerning the controversy that has already been initiated by class members, the desirability of concentrating the litigation of the claims in a particular forum, and the likely difficulties in the management of a class action, as well as the policy underlying Rule 23 to "achieve economies of time, effort and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *State of Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 315 (5th Cir.1978).

■ The district court has broad discretion in determining whether to certify a class, but that certification must be exercised within Rule 23's parameters. *Castano,* 84 F.3d at 740. The party moving for certification bears the burden of proof. *Id.* In seeking class certification, Plaintiffs must do more than conclusorily allege they have met the requirements of Rule 23, but they are not required to prove a *prima facie* case. *Aiken v. Neiman–Marcus,* 77 F.R.D. 704, 704 (N.D.Tex.1977)(Higgenbotham, J.). The district court, while not reviewing the issues on the merits, may look beyond the pleadings in deciding if Rule 23 prerequisites have been met, as to do so it must understand the claims, defenses, relevant facts, and applicable substantive law to make a meaningful

determination of the certification issues. *Castano*, 84 F.3d at 744.

Plaintiffs seek certification of a class defined as consisting of all persons who are residents of Texas and entered into transactions with Defendants purporting to be cashback advertising sales. They further propose two subclasses [1] based on applicable statutes of limitations. For the TILA claim under Count One, the proposed class consists of all such persons who entered into these transactions with Defendants between July 27, 1998 and the present. For purposes of Counts Two (usury), Four (DTPA), Five (civil conspiracy), and Six (RICO), the class is to consist of all such persons who entered into these transactions with Defendants between July 27, 1995 and the present.

Defendants challenge the motion for class certification by contending that Plaintiffs fail to satisfy the requirements of superiority of the class action as a method of disposing of the putative class' claims, commonality of issues of the class predominating over issues affecting individual members of the class, typicality (claims arising from the same event, practice or course of conduct of Defendants that gives rise to the claims of other class members), and adequacy of class representation. At the hearing they objected in most the conclusory terms, without providing any specifics.

■ The Court finds that Plaintiffs have met their burden of proof as movants for class certification. First they have demonstrated that the proposed class satisfies the numerosity requirement by showing that Defendants' records reflect Defendants had between 30,000—40,000 loan-customer files from all over Texas.

■ Defendants have shown that the proposed class satisfies the commonality requirement because there are common questions linking all class members on all causes of action on which Plaintiffs seek class certification. With respect to Count One, violations of TILA, the shared questions are whether Defendants were engaged in making consumer loans and whether their failure to provide required disclosures violates the stat-

ute. Courts have standardly held that deferred presentment transactions are extensions of credit under TILA. *Turner v. E–Z Check Cashing of Cookeville, Tennessee, Inc.,* 35 F.Supp.2d 1042, 1047 (M.D.Tenn.1999). *See also Hamilton v. York,* 987 F.Supp. 953, 957–58 (E.D.Ky.1997); *Cashback Catalog Sales, Inc. v. Price,* 102 F.Supp.2d 1375, 1382 (S.D.Ga.2000). Because a borrower need not show reliance or injury for a TILA cause of action, but simply make an objective comparison of Defendants' disclosure practices with the requirements of TILA and Federal Board Regulation Z, 12 C.F.R. part 226, there is no danger of individual differences undermining class similarities. *Wright v. Tower Loan of Mississippi,* 679 F.2d 436, 445 (5th Cir.1982); *Zamarippa v. Cy's Car Sales Inc.,* 674 F.2d 877, 879 (11th Cir.1982). Plaintiffs have also underlined the fact that TILA, 15 U.S.C. § 1640, expressly refers to class actions and that numerous class actions have been certified since that revised provision was added. *See, e.g., Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir.1974); *Adiel v. Chase Fed. S & L Ass'n,* 810 F.2d 1051 (11th Cir.1987); *Bantolina v. Aloha Motors, Inc.,* 419 F.Supp. 1116, 1120, 1122 (D.Haw.1976)("The possibility of class-action exposure is essential to the prophylactic intent of the Act, and is necessary to elevate truth-in-lending lawsuits from the ineffective nuisance category to the type of suit which has enough sting to insure that management will strive with diligence to achieve compliance."); *Jones v. Goodyear Tire & Rubber Co.,* 442 F.Supp. 1157 (E.D.La.1977).

■ For Plaintiffs' usury cause of action under Count Two, the common questions are whether Defendants' transactions are loans and whether they exceed the statutory interest rate limit for unlicensed small loan lenders. Here, too, class actions for violations of its usury laws have been expressly approved, in this instance by the Texas legislature. Tex. Fin.Code § 349.403.

■ The nature of the misleading representations and deceptive practices in violation the DTPA would be the same for all

---

1. The Court observes that Rule 23(c)(4)(B) specifically allows for multiple classes in a single case.

class members in the face of these centrally directed, standardized scheme.

The elements of the alleged conspiracy among Defendants would also be the same for all proposed class members.

█ Plaintiffs' cause of action under Count Six, RICO, has as its principal question whether Defendants conducted or participated in the conduct of the alleged enterprise(s) through patterns of racketeering within a ten year period. It specifically provides a civil remedy for people injured by the collection of an unlawful debt in violation of 18 U.S.C. § 1964(c). For RICO purposes, an "unlawful debt" includes a debt that is usurious under state or federal law. 18 U.S.C. § 1961(6). Because such a claim requires Plaintiffs to show a "pattern of activity," the proof in a class action and in an individual action are the same. *Heastie v. Community Bank of Peoria,* 125 F.R.D. 669 (N.D.Ill. 1989). Again, identification of consumers who took the allegedly unlawful loans and the amount of their injuries would be easily ascertainable from Defendants' records and thus constitute no obstacle to class certification.

█ Typicality is inherent in the class definition because each member entered into the same type of transaction, a payday loan, with Defendants and his/her claims arose from the same practices of Defendants.

Finally the proposed representation is adequate. As evidence of identity of interests, Plaintiffs and the class members both seek money damages for injuries caused by Defendants' sham transactions and their damages are easily determinable from Defendants' records. There is no evidence of antagonistic interests. Defendants' counsel conceded at the hearing that Plaintiffs' counsel are experienced, qualified and able to conduct a class action lawsuit. Plaintiffs' counsel have also produced evidence of their competence with submission of their Application to Appoint Class Counsel.

█ Furthermore Plaintiffs satisfy the requirements under Rule 23(b)(3). Questions of law and fact are common to all members of the class and predominate over any individual claims. Plaintiffs have provided evidence, including customer loan files and a Management Agreement (Pl.'s Ex. 2) that governs Defendant's alleged organization, that demonstrates that Defendants operated in essentially the same manner, as centrally directed by Defendant Cash Today USA, with regard to all customers. With regard to Count One, the common link is that Defendants engaged in the same practices of alleged *nondisclosure in the context of* purported consumer loan transactions with regard to all class members, and the sole dispositive issue is whether Defendants violated Plaintiffs and class members' rights through such practices, The "common nucleus of operative fact" for purposes of the Count Two usury claim is that Defendants lent Plaintiffs' money at a rate exceeding 600% per annum. Indeed, at the hearing Plaintiffs calculated the interest to be 860% per annum, without any objection from Defendants' counsel.[2] For Count 4, Defendants allegedly engaged in the same deceptive trade practices with regard to all potential class members. The same conspiracy is alleged against Defendants under Count Five. For Count Six, the common questions are whether Defendants were engaged in racketeering activity or collecting an unlawful debt, whether an enterprise exists, and whether defendants conducted or participated in an enterprise. No reliance or causation need be shown but only (1) that Defendants used the income from the collection of usurious debts to acquire an interest in or establish an enterprise, 18 U.S.C. § 1962(a); used the income from the collection of usurious debts to acquire or maintain any interest in or control over an enterprise, 18 U.S.C. § 1962(b); participated in the conduct of an enterprise's affairs involving the collection of a usurious debt, 18 U.S.C. § 1962(c); or conspired to do any of the foregoing acts, 18 U.S.C. § 1962(d). Even a violation involving proof of racketeering requires proof of causation, but not reliance. *Holmes v. Securities Investor Protec-*

2. Under RICO debt collection is unlawful where it is at least twice the legal amount allowed by state law. 18 U.S.C. § 1961(6). In Texas, unlicensed lenders are limited to charging 10% interest.

*tion Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Taffet v. Southern Co.,* 967 F.2d 1483 (11th Cir.), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992).

In addition, a class action has been shown to be superior to other methods for resolving this suit. Plaintiffs emphasize that most of the affected borrowers are probably unaware of the violation of their rights and the claims individually are for relatively small amounts of money, making the likelihood of individual litigation unlikely. In determining the best available method for resolving a dispute, the Court may consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture,* 503 F.2d at 1165. In "small-stakes cases, a class suit is the best, and perhaps the only, way to proceed. [citations omitted]" *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877, 880 (7th Cir.2000). *See also Williams v. Chartwell Financial Services, Ltd.,* 204 F.3d 748, 760–61 (7th Cir.2000)("Our concern ... is heightened by the importance of the class certification issue in TILA cases, where the small amounts of money involved and the difficult financial situations of many of the litigants may inhibit individualized litigation"); *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997). Under TILA, 15 U.S.C. § 1640(a), the maximum statutory damages recoverable are $1000, providing minimal incentive for individual suits. *See Brewer v. Friedman,* 152 F.R.D. 142, 144 (N.D.Ill.1993)(certifying class under Fair Debt Collection Practices Act because maximum statutory damages of $1000 may be too insignificant to pursue on an individual basis). The Fifth Circuit has concluded that pursuing a class action usury claim was "not only superior to other methods, but singularly appropriate for adjudication." *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1108 (5th Cir. 1978), *aff'd,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). The Supreme Court has noted,

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Products, Inc. v. Windsor,* 521 U.S. at 617, 117 S.Ct. 2231. Here the nature of the case indicates that the potential class is composed of individuals so financially strapped that they would borrow money at extremely usurious rates.

Thus Plaintiffs have met their burden of proof on all prerequisites for class certification under Rule 23(a) and (b)(3).

Accordingly, for the reasons indicated above, the Court

ORDERS that Plaintiffs' motion for class certification, with its two designated subclasses, is GRANTED. The Court further

ORDERS that Plaintiffs shall submit within thirty days a proposed order prescribing the notice to be given to potential class members. Defendants shall file any objections within seven days of receipt of that proposed notice.